420 F.2d 72
 73 L.R.R.M. (BNA) 2466, 73 L.R.R.M. (BNA) 2468,
136 U.S.App.D.C. 230
 BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Appellant,
v.
BANGOR AND AROOSTOOK RAILROAD COMPANY et al., Appellees.
BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Appellant,
v.
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Appellees.
BANGOR AND AROOSTOOK RAILROAD COMPANY et al., Appellants,
v.
BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Appellee.
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Appellants,
v.
BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Appellee.
 Nos. 20192, 20193, 20215, 20216.
 United States Court of Appeals District of Columbia Circuit.
 Argued Dec. 17, 1968.
Feb. 28, 1969, Petition for Rehearing Denied Oct. 23, 1969,
Certiorari DeniedApril 6, 1970, See 90 S.Ct. 1258.
 
 Mr. Joseph L. Rauh, Jr., Washington, D.C., with whom Messrs. John Silard, Washington, D.C., Daniel H. Pollitt, Chapel Hill, N.C., Isaac N. Groner, David Epstein, Stephen E. Moss, Washington, D.C., and Alex Elson, Chicago, Ill., were on the petition, for appellant.
 Mr. Richard T. Conway, Washington, D.C., with whom Messrs. Francis M. Shea and William H. Dempsey, Jr., Washington, D.C., were on the opposition to the petition, for appellees.
 Before DANAHER,* BURGER and LEVENTHAL, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this case we grant the petition filed by Brotherhood of Locomotive Firemen and Enginemen (BLFE) for a ruling concerning the intention and effect of our previous rulings in the railroad work rules litigation.
 
 
 2
 It suffices for present purposes to recall that an action was filed on March 24, 1966, by the nation's railroads against BLFE (Firemen), concerning the situation that would confront the nation with the expiration on March 31, 1966, of the fireman-manning Award of Arbitration Board 282. The Firemen were to strike on the ground that they had given an appropriate notice in 1965, to take effect after the expiration of Award 282, to increase the number of firemen above that provided by the Award. The railroad had refused to bargain over that notice, contending that it was non-bargainable. They obtained a temporary restraining order on March 28, against strikes by the BLFE over any dispute as to the rules to be applied by the carriers after the expiration of that period. The BLFE struck certain carriers the morning of March 31, and these strikes were specifically enjoined by a supplement to the temporary restraining order entered that day. The strike terminated on April 3. On April 29 the carriers filed two motions-- one for an order awarding compensatory damages for contempt, and one for an order assessing a fine as a coercive penalty for failure to terminate the contempt.
 
 
 3
 The 'coercive contempt' matter came before us in No. 20316, wherein this court overruled BLFE's effort to interpose a defense based on the invalidity of the restraining order under the Norris-LaGuardia Act. BLFE v. Bangor & Aroostook R.R. Co., 127 U.S.App.D.C. 23, 380 F.2d 570 (1967). The court held that a coercive contempt fine could stand even assuming the restraining order itself was beyond the jurisdiction of the District Court by virtue of the Norris-LaGuardia Act. It held the doctrine of United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), which allows alleged contemnors to challenge the propriety of the underlying order in defense of an otherwise contemptuous disobedience to be a 'directive in regard to, the right of defendants in criminal and compensatory civil contempt proceedings,' but declared that 'prospective, coercive fines should be enforceable despite a subsequent determination by the District Court, or on appeal, that the disregarded order was in fact beyond the ordering court's jurisdiction.' See 127 U.S.App.D.C. at 36, 380 F.2d at 583.
 
 
 4
 That coercive contempt case, however, is not the subject of our present consideration. In the opinion cited above this court remanded to provide a trial to defendants on a contested issue, and that proceeding is in the bosom of the court. What we are concerned with is the other motion filed by the carriers, for compensatory damages. The District Court declined to dismiss the compensatory contempt proceeding. We think appellants are entitled to relief declaring that such dismissal is a corollary that follows from the rulings of this court on the merits.
 
 
 5
 In No. 20316, as noted above, this court (following Mine Workers) pointed out that in a 'compensatory' civil contempt proceeding-- unlike a coercive civil proceeding-- the alleged contemnor establishes a defense if he successfully challenges the propriety of the underlying order.
 
 
 6
 The lack of propriety of the restraining order is established by this court's ruling on the merits in No. 20152 et al. See opinion of May 12, 1967, and supplemental opinion of July 31, 1967, reported together sub nom. Brotherhood of Railroad Trainmen v. Akron & Barberton Belt R.R. Co., 128 U.S.App.D.C. 59, 385 F.2d 581 (1967), cert. denied, 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968). In the May 12 opinion this court held, reversing the District Court, that there had been an unlawful refusal by the carriers to bargain with the firemen. In the July 31 opinion we held[1] that the District Court had erred in granting injunctive relief to the carriers without regard to 8 of the Norris-LaGuardia Act,[2] in the mistaken view that 8 was completely inapplicable. Section 8 provides that a federal court shall not grant a restraining order in a labor dispute where the complainant 'has failed to comply with any obligation imposed by law which is involved in the labor dispute in question.' We said (128 U.S.App.D.C. at 91-92, 385 F.2d at 613-614):
 
 
 7
 The District Court erred in concluding that because it held, correctly, that the action was not subject to Section 4 of the Norris-La Guardia Act, which would have ousted the court of jurisdiction, it necessarily followed that the 'clean hands' provision of Section 8 of the Norris-La Guardia Act was likewise wholly inapplicable. * * * In saying that the restraining order was erroneously entered, however, we do not mean that would excuse a contemptuous violation.
 
 
 8
 The last sentence quoted related to the earlier ruling in No. 20316 that the irregularity of the injunction would not provide a defense in a coercive contempt proceeding. And the July 31 ruling specifically affirmed and adhered to the ruling in No. 20316-- by the same panel-- that the District Court was correct in holding that it had jurisdiction to enjoin a violation of the Railway Labor Act, and that this jurisdiction was not negatived by 4 of the Norris-LaGuardia Act.[3] See 128 U.S.App.D.C. at 91, 385 F.2d at 613. However, as noted, the District Court acted improperly in the exercise of its jurisdiction when it did not heed the 'clean hands' provision of 8 of that law.
 
 
 9
 The key mistake of the District Court lay in its assertion that there is no distinction between the right to impose a coercive fine in order to enforce an injunction and the right to compensatory damages for its violation, and that in both respects failure to obey an invalid injunction is punishable as a contempt.[4] That that is error is clear from the rulings already quoted. The invalidity of the order is no bar to a proceeding that vindicates a public right, the authority of the court. However the railroads' right to compensation depends on their establishing a private right, to the injunctive relief, and in this case that right was negatived by their own unlawful refusal to bargain on BLFE's notice of a proposed change in manning work rules.
 
 
 10
 A question arises as to the appropriate form of relief. While in some cases mandamus has been used,[5] we see no occasion to think in terms of formal mandates. The District Court is, we are confident, fully concerned to provide the fresh outlook of settling disputes between unions and railroads in furtherance of the Congressional objective of agreement and harmony.[6] It is for that reason that we think this an appropriate case to clarify the intention of our prior rulings, and pull out from the litigation a thorn that might otherwise fester. It suffices for that purpose to issue this opinion which will in due course be transmitted to the District Court.[7]
 
 
 11
 Petition granted.
 
 
 
 *
 Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969
 
 
 [1]
 The particular ruling came in the context of discussing the plea of BRT for recovery on their injunction bond, but no one contends there is any meaningful difference between the unions in regard to the question at bar. This court assumed that the District Court would issue rulings applying and implementing the decision of this court
 
 
 [2]
 See 29 U.S.C. 108 (1964)
 
 
 [3]
 Though at one point there is general language in No. 20316 that the Norris-LaGuardia Act did not preclude the restraining order against BLFE, it is clear from several places in context that what this court was troubled by and focused on was the claim that defendants were being fined for violating an order that was beyond the jurisdiction of the District Court. Even this is no defense in a coercive contempt proceeding, as noted above, but it was reassuring that the District Court did in fact have jurisdiction notwithstanding 4. In exercising that jurisdiction, it was required to observe the clean hands provision of 8
 
 
 [4]
 See Tr. May 28, 1968, p. 62
 
 
 [5]
 See Federal Home Loan Bank v. Hall, 225 F.2d 349, 385 (9th Cir. 1955), cert. denied, 350 U.S. 968, 76 S.Ct. 438, 100 L.Ed. 840 (1957)
 
 
 [6]
 See 128 U.S.App.D.C. at 82-83, 385 F.2d at 604-605
 
 
 [7]
 Cf. S. S. Kresge Co. v. Winget Kickernick Co., 102 F.2d 740 (8th Cir.), cert. denied, 308 U.S. 557, 60 S.Ct. 79, 84 L.Ed. 468 (1939)